# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS PAUL DEGRADO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 13-cv-05978 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| IMHOTEP CARTER, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendants Terri Anderson, Shaun Bass, Royce Brown-Reed, Marcus Hardy, Sarah Johnson, and Anna McBee's motion to dismiss [74] is denied. Status hearing set for 4/19/2017 at 9:00 AM. See accompanying Statement for details.

## STATEMENT

Plaintiff Thomas Degrado, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, has brought this lawsuit pursuant to 42 U.S.C. § 1983. Degrado alleges that Defendants were deliberately indifferent to his serious medical needs. Specifically, Degrado claims that he injured his wrist several times in August 2011 while he was imprisoned at Stateville Correctional Center ("Stateville"), but that he received unsatisfactory medical attention resulting in debilitating pain and physical deformity. Defendants Terri Anderson, Shaun Bass, Royce Brown-Reed, Marcus Hardy, Sarah Johnson, and Anna McBee (collectively, "IDOC Defendants") have moved this Court to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 74.) The Court denies the motion for the reasons that follow.

###    I.    Background

The Court takes the following facts from Degrado's Amended Complaint. (Dkt. No. 69.) When analyzing a this motion, made under Rule 12(b)(6), the Court must "construe [the complaint] in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

On August 1, 2011, Degrado tripped and fell on his left hand and wrist. (Am. Compl. ¶ 16, Dkt. No. 69.) Degrado requested to be sent to the infirmary but was sent back to his unit instead. (*Id.* ¶ 18.) In the next couple of days, swelling deformed Degrado's hand and wrist, causing him such pain that he vomited. (*Id.* ¶ 19.) Nonetheless, he was not admitted to the infirmary, but rather was sent back to his own cell. (*Id.*) Thereafter, Degrado did not see a doctor

until August 8, 2011. (*Id.* ¶¶ 20–24.) The doctor told him that his wrist was simply dislocated—not broken—although an X-ray taken four days later indicated that his wrist was in fact broken. (*Id.* ¶¶ 25–26.) On August 12, Degrado fell and again landed on his injured left wrist. (*Id.* ¶ 27.) His request to go to the health care unit was denied. (*Id.* ¶ 28.) On or about November 1, 2011, Degrado was sent to an orthopedic specialist outside the prison, who diagnosed him with a fractured and improperly reunited wrist. (*Id.* ¶ 33.)

After Degrado's second request to go to the medical unit was denied, in late August 2011, Degrado filed his first grievance under Stateville's grievance procedure. (*Id.* ¶ 29.) This grievance was denied. Then, on October 26, 2011, Degrado wrote Defendant Marcus Hardy, Stateville's Chief Administrative Officer, to explain that his pain had not stopped and that he had not seen an orthopedist. (*Id.* ¶ 32.) In addition, Degrado had other "conversations [with and] letters and grievances filed or delivered to" Hardy among others. (*Id.* ¶ 39.) But Hardy "refused to grant [Degrado] emergency medical treatment or properly treat [his] broken left wrist." (*Id.* ¶ 28.) Degrado also directed letters and other communications to Royce Brown-Reed, Chief Administrator of Stateville's Health Unit "responsible for the care and humane treatment of inmates." (*Id.* ¶ 47.)

Ultimately, Degrado's grievances did not get him his desired medical relief, leading to his claims against the IDOC Defendants. As noted, the Amended Complaint sets forth that Hardy and Brown-Reed were aware of Degrado's grievances about his medical condition and care and failed to take any action, leading to his prolonged pain and injury. In a similar vein, the Amended Complaint alleges that Bass and McBee were grievance officers "responsible for the proper administration and care of the inmates at Stateville" and knew of Degrado's complaints about his medical treatment, but denied and disregarded those complaints. (*Id.* ¶¶ 40, 51–53.) Finally, the Amended Complaint alleges that Anderson and Johnson, members of Stateville's Administrative Review Board, reviewed Degrado's grievances and denied them, thereby also causing him prolonged pain and injury. (*Id.* ¶¶ 29, 54–57.)

## II. Discussion

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

A "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another "person within the jurisdiction of [the United States] . . . of any [constitutional] rights . . . shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Prisoners enjoy a constitutional right not to be subjected to cruel and unusual punishment. U.S. Const. amend. VIII. That right includes "a right to adequate medical care." *See Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). To state a claim for constitutionally deficient medical care, a

2

plaintiff "must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

The objective seriousness of Degrado's medical condition is not at issue here. Rather, the IDOC Defendants move to dismiss Degrado's claim on the grounds that he has failed to allege facts sufficient to allow the Court reasonably to infer that they were deliberately indifferent. The IDOC Defendants also argue that they are entitled to qualified immunity for any of their alleged constitutional violations. The Court considers these arguments in turn.

### A. Deliberate Indifference

On the deliberate indifference element, Degrado must allege "that the responsible prison officials were subjectively aware of the condition, and consciously disregarded the risk to [his] health or safety." *Hemphill v. Wexford Health Sources, Inc.*, 2016 WL 2958449, at *2 (N.D. Ill. May 23, 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000)). That is, he "must allege that a prison official, acting with a culpable state of mind, knew of a significant risk to [his] health and disregarded that risk." *Id.* (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

The allegations in Degrado's Amended Complaint satisfy these requirements. With respect to each of the IDOC Defendants, Degrado alleges that he or she personally received Degrado's grievances and was aware of his serious medical condition, that he or she failed to take adequate action and thus consciously disregarded the risks posed to Degrado, and that his or her actions resulted in his prolonged pain and injury.

The IDOC Defendants cite *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009), and *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007), for the proposition that reviewing and deciding on a grievance cannot ground a constitutional claim for inadequate medical care. This is incorrect. *Burks* involved a grievance officer who dismissed a grievance as untimely. 555 F.3d at 594. The prisoner complained that the grievance officer exhibited deliberate indifference to his condition. *Id.* at 595. The Seventh Circuit rejected this argument, stating that the grievance officer's "decision manifests only attention to her role in the prison's operations. [She] was a complaint examiner, not a physician or nurse, and one duty of a complaint examiner is to dismiss untimely grievances." *Id.* Nothing in the Amended Complaint suggests anything analogous here. Unlike the situation in *Burks*, Degrado complains not that the IDOC Defendants were following a broken process and should have gone over and beyond their duties but rather that they culpably disregarded a significant risk to his health in dereliction of their duties. *George* is similarly inapposite. There, the Seventh Circuit determined that a prisoner's claims against officials who ruled on his administrative, nonmedical complaints failed because their actions in denying his complaints did not "contribute to the violation." 507 F.3d at 610. But here, Degrado has alleged that the grievance officers' actions in disregarding his grievances did contribute to the alleged constitutional violation because they resulted in continuing deficient medical care and exacerbated his medical injury.

Brown-Reed and Hardy occupied supervisory roles in the grievance system and so the IDOC Defendants argue that they did not have sufficient personal involvement to ground Section 1983 liability. In so doing, the IDOC Defendants argue that Degrado has only asserted claims against Brown-Reed because of her position as Healthcare Unit Administrator. With respect to Hardy, the IDOC Defendants argue that it would be implausible for him, acting as the Warden, to be involved in or have knowledge of Degrado's day-to-day medical care. Both of these arguments fail, at least for now. First, Degrado alleges that Brown-Reed received "direct letters, grievances, in person complaints and the like" which informed her of his medical condition, that she was responsible for his care, and that she failed to act accordingly. (Am. Compl. ¶¶ 47–50.) The IDOC Defendants may disagree with that factual contention, but resolving such a factual debate is not appropriate at the motion to dismiss stage. Similarly, resolving the factual disagreement regarding whether Hardy actually had personal involvement in Degrado's medical care is not appropriate at this stage of the proceedings. At this juncture, the Court must accept the well-pleaded facts in Degrado's Amended Complaint as true, and thus his claims against Brown-Reed and Hardy survive the motion to dismiss. The IDOC Defendants may pursue these arguments in discovery, at the summary judgment stage, and, if necessary, at trial.

### B. Qualified Immunity

In staking their claim to qualified immunity, the IDOC Defendants principally argue that there is no analogous case law holding that they can be liable for review of grievances. This is incorrect, for the Seventh Circuit has stated that "nonmedical officials can be chargeable with . . . deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner. Non-medical defendants cannot simply ignore an inmate's plight." *Arnett*, 658 F.3d at 755–56 (internal quotations and citations omitted). When an official is alerted to a risk of medical harm to an inmate, the "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* (internal quotations and citations omitted). Here, Degrado has alleged that the IDOC Defendants each had a responsibility to ensure his proper care. He further alleges that each of them received and reviewed his grievances, became aware of his medical plight, and yet did not exercise their authority to rectify his situation. That is squarely within the ambit of *Arnett*'s teaching. If Degrado is able to prove his allegations, then the IDOC Defendants are not entitled to qualified immunity.

Dated: March 31, 2017

_____
Andrea R. Wood
United States District Judge